AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| William ESTRADA ARTEAGA | ) Case No. 3:24-mj-70732 MAG |
| *Defendant(s)* | ) |

FILED
May 15 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **February 18, 2024** in the county of **San Francisco** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C)--Possession with Intent to Distribute Fentanyl<br>21 U.S.C. §§ 841(a)(1), (b)(1)(C)--Distribution of Methamphetamine | Possession with Intent to Distribute Fentanyl AND Distribution of Methamphetamine<br>Maximum penalties:<br>• Imprisonment: 20 years (21 U.S.C. § 841(b)(1)(C))<br>• Fine: $1 million (21 U.S.C. § 841(b)(1)(C))<br>• Supervised Release: Min. 3 years - Max. life (21 U.S.C. § 841 (b)(1)(C))<br>• Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))<br>• Forfeiture: 21 U.S.C. § 853(a) I Deportation I Denial of Federal Benefits |

This criminal complaint is based on these facts:

See attached affidavit of DEA TFO Braden Lyons

☑ Continued on the attached sheet.

Approved as to form */s/ John Ullom*
SAUSA John Ullom

/s/ Braden Lyons
*Complainant's signature*

Braden Lyons, DEA TFO
*Printed name and title*

Sworn to before me by telephone.

Date: 05/15/2024

*/s/ Sallie Kim*
*Judge's signature*

City and state: San Francisco, California

Sallie Kim, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN
## ARREST WARRANT AND CRIMINAL COMPLAINT

I, Braden Lyons, a Task Force Officer with the Drug Enforcement Administration, being duly sworn, hereby declare as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging WILLIAM ESTRADA ARTEAGA ("ESTRADA ARTEAGA"), with possession with intent to distribute a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and distribution of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), both occurring on or about February 18, 2024, in San Francisco, California, in the Northern District of California

### SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Task Force Officers, Special Agents, and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am an "investigator or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21 of the United States Code.

5. I am employed by the San Francisco Police Department as a Police Officer and have been so employed since October 2017. I am currently assigned to SFPD's Narcotics Division, which investigates narcotics trafficking offenses. I am also a Task Force Officer for the Drug Enforcement Administration within its San Francisco Divisional Office in California. I have been assigned as a DEA TFO since April 2022.

6. I graduated from the SFPD academy in June 2018. In the police academy, I received 40 hours of narcotics-related training. I also attended the SFPD Detective School where I received additional narcotics investigations training. The training curriculum covered all aspects of drug investigations, including identification of the various types of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations.

7. The following is a list of courses I have successfully completed that are relevant to my job duties, including narcotics-related arrests, investigations, and search warrants: Search Warrant Fundamentals (POST Certified-DOJ); Robert Presley Institute of Criminal Investigation (ICI) 80-hour Core Course; Cellphone Use in Narcotic Investigations (HIDTA); Gangs and Narcotics (HIDTA); Search Warrants and Narcotics Investigations (HIDTA); Northern California Law Enforcement Opioid Conference & Training 2021 (Rx Safe Marin); Confidential Informant Operations & Safety (HIDTA); Fentanyl and Other Synthetic Opiates (Midwest Counter-Drug Training Center); Drug Identification (Professional Law Enforcement Training – Texas); and the 57th Annual California Narcotics Officers Association Training Institute and LE Enforcement Summit.

8. During my employment as a police officer, I have participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources and witnesses who provided personal knowledge about drug trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations, including, but not limited to, undercover operations, telephone toll analysis, records research, and physical surveillance. I have also assisted in the execution of numerous federal and state search and arrest warrants relating to illegal narcotics activity, in which suspects were arrested and controlled substances were seized.

9. Through my training and experience, and through my conversations with other law enforcement officers and agents who conduct drug investigations, I have become familiar with drug traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, storage, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

10. I have also had discussions with other law enforcement officers and confidential informants about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed.

11. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

12.     **Possession of Controlled Substance with Intent to Distribute or Distribution of Controlled Substance**.  Under 21 U.S.C. § 841(a)(1), (b)(1)(C), it is unlawful for any person to knowingly or intentionally possess with intent to distribute or distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12, fentanyl and methamphetamine are Schedule II controlled substances.

## STATEMENT OF PROBABLE CAUSE

**February 18, 2024: ESTRADA ARTEAGA possessed fentanyl with the intent to distribute it and distributed methamphetamine.**

13.     On February 18, 2024, a San Francisco Police Department [SFPD] officer acting in an undercover capacity [the "Undercover Officer"] served as a "buy" officer during a "buy/bust" operation.  Prior to the commencement of the operation, the Undercover Officer was provided with marked city funds ["MCF"] which were time stamped and photographed.

14.     At approximately 6:10 a.m., the Undercover Officer was walking on Hyde Street from O'Farrell Street in San Francisco.  The Undercover Officer noticed an unknown ["Unknown"] individual and Estrada Arteaga standing on the corner of Hyde and Ellis Streets.  The Undercover Officer proceeded to cross the street and approach Estrada Arteaga and Unknown.

15.     Prior to contacting Estrada Arteaga and the unknown individual, the Undercover Officer observed Unknown retrieve a clear plastic bag from his jacket pocket.  The clear plastic bag appeared to contain a white unknown substance, which the Undercover Officer believed to be narcotics based on his training and experience.  The Undercover Officer approached Unknown and made eye contact with him.  The Undercover Officer nodded at Unknown and Unknown nodded back.  The Undercover Officer then asked Unknown if he had "crystal", which is a common street term for methamphetamine.  Unknown replied in Spanish, "tengo crack", which is Spanish for "I have crack".  It should be noted that the Undercover Officer is a certified Spanish interpreter for the SFPD.  The Undercover Officer then repeated, "crystal".

16. Unknown then was observed turning to Estrada Arteaga and stating "Quiere cristal", which means "he wants crystal". Estrada Arteaga immediately approached the Undercover Officer and retrieved a clear plastic bag from his left jacket pocket containing an off-white crystal-like substance which the Undercover Officer believed based on his training and experience to be methamphetamine.

17. The Undercover Officer told Estrada Arteaga "venti" which means twenty in Spanish. The Undercover Officer handed Estrada Arteaga $20 in MCF. Estrada Arteaga then retrieved two crystals from the aforementioned clear plastic bag and placed them in the Undercover Officer's hand. The Undercover Officer told Estrada Arteaga "Mas" which means more in Spanish. Estrada Arteaga retrieved one additional smaller crystal and placed it in the Undercover Officer's hand.

18. The Undercover Officer then walked away and crossed the street to the west sidewalk of Hyde Street. The Undercover Officer gave a pre-arranged signal to notify the arrest team that a narcotics transaction had taken place. The Undercover Officer provided a description of Estrada Arteaga, including his clothing, to a close cover officer. The Undercover Officer provided the close cover officer the three crystals of suspected methamphetamine that he had purchased from Estrada Arteaga.

19. Officers Maher and Huertas were provided with a description of Estrada Arteaga by the close cover officer. Officers Maher and Huertas were in a marked patrol car and drove in the area of Van Ness and Ellis Street where they observed Estrada Arteaga, who matched the provided description. After a brief struggle, Estrada Arteaga was taken into custody.

20. The Undercover Officer and close cover officer responded to the scene and confirmed that Estrada Arteaga was the individual who had just sold the Undercover Officer methamphetamine. Officer Maher then conducted an arrest search of Estrada Arteaga and recovered suspected fentanyl, methamphetamine, heroin, alprazolam, cocaine base and marijuana from Estrada Arteaga's person. Officer Maher also recovered $1878 in U.S. Currency, a digital scale, a cellphone, and numerous plastic sandwich bags. The marked city

funds were also recovered from Estrada Arteaga's person.  It should be noted that there was no personal use paraphernalia recovered from Estrada Arteaga.

21. Officer Maher provided the suspected narcotics to the close cover officer, who weighed and conducted presumptive testing on the suspected narcotics.  The results were as follows: the purchased suspected methamphetamine weighed 2.2 grams gross and tested positive for methamphetamine, 7.1 grams gross of methamphetamine recovered from Estrada Arteaga tested positive, 57.7 grams gross of suspected fentanyl in 10 separate baggies tested positive for fentanyl, and 19.6 grams gross of suspected cocaine base in two baggies tested positive for cocaine base.  The presumptive testing of the suspected heroin and Alprozaolam was inconclusive.

22. The narcotics were sent to the Alameda County Sheriff's Office Crime Lab and the results confirmed that the narcotics seized were illicit drugs as suspected.  Specifically, the suspected methamphetamine and fentanyl were confirmed to be such.  The suspected Alprozaolam was not tested.

23. Based on my knowledge, training, experience, consultation with other experienced law enforcement officers, and knowledge of similar investigations, I believe that the narcotics located on Estrada Arteaga's person were under his dominion and control.

24. Based on my knowledge, training, experience, and consultation with other experienced officers, I believe the amount of fentanyl possessed, the multiple drugs possessed, the manner of their packaging, the cash, the digital scale, the absence of personal use paraphernalia, and the totality of circumstances described above (including Estrada Arteaga engaging in a hand-to-hand narcotics transaction) indicate that the suspected fentanyl seized from Estrada Arteaga was possessed with the intent to distribute.  This conclusion is reinforced by the fact the conduct occurred while in or near the intersection of Hyde and Ellis Streets, an area notorious for a high volume of drug sales activity, and Estrada Arteaga possessed these drugs shortly after selling methamphetamine to the Undercover Officer.  Accordingly, there is

probable cause to believe Estrada Arteaga possessed the fentanyl found by law enforcement on his person with the intent to distribute.

25. Based on my knowledge, training, experience, and consultation with other experienced officers, and my review of the case related materials for the February 18, 2024, incident involving Estrada Arteaga, there is also probable cause to believe that Estrada Arteaga knowingly distributed methamphetamine to another individual.

## **CONCLUSION**

26. Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on or about February 18, 2024, in the Northern District of California, Estrada Arteaga possessed with the intent to distribute fentanyl and distributed methamphetamine, both in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for his arrest.

*/s/ Braden Lyons*
Braden Lyons
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 15th day of May, 2024. This complaint and warrants are to be filed under seal.

_____
HONORABLE SALLIE KIM
United States Magistrate Judge